Ralph S. COUGHENOUR, Appellant,

v.

Harold Paul BATES and Thelma Bates, Respondents.

No. 16338.

Missouri Court of Appeals,
Southern District,
Division One.

March 5, 1990.

Francis H. McClernon, Jr., Springfield, for appellant.

Jerry L. Reynolds, Ronald A. Conway, Jerry L. Reynolds and Associates, P.C., Springfield for respondent Harold Paul Bates.

No appearance for Thelma Bates.

CROW, Presiding Judge.

This appeal presents the issue of what rate of interest plaintiff Ralph S. Coughenour must pay defendants Harold Paul Bates and Thelma Bates under a contract for the purchase of real estate.

On March 20, 1982, the parties signed a "contract for deed" whereby plaintiff agreed to purchase a tract of real estate from defendants for $100,000. At time of closing plaintiff was to pay $12,500 in cash; the remaining $87,500 was to be "amortized in monthly payments over a term of 30 years." Payments were to commence May 1, 1982. The interest rate was fixed by the contract at ten percent per annum, which was to remain in effect "to and including the payment due April 1, 1984." The contract continued:

"Commencing with the monthly payment due May 1, 1984, and thereafter,

the interest rate shall be adjusted to equal that rate of interest charged from time to time by the Federal Land Bank for real estate loans in the State of Missouri, and shall be adjusted contemporaneously with such changes in the Federal Land Bank rate, but in no event shall said rate of interest exceed Twelve and One-half Percent (12½%) per annum. At such times as the rate of interest hereunder is adjusted to conform with the rate charged by the Federal Land Bank, the unpaid principal balance shall be re-amortized over the remaining unexpired period of the initial 30–year term and the amount of the monthly payment shall be adjusted accordingly."

The contract further provided that the tract was subject to a first deed of trust in favor of the Federal Land Bank, and that defendants would faithfully perform the terms of the deed of trust and satisfy any payment required thereunder as the same became due. When the full purchase price was ultimately paid by plaintiff to defendants, defendants were to convey the tract to plaintiff by warranty deed.

The evidence revealed that at the time the contract was signed the Federal Land Bank was charging all its borrowers the same rate of interest for real estate loans in Missouri. The Bank did, however, change the rate from time to time.

Plaintiff made the monthly payments to defendants as required by the contract through April 1, 1984.

On May 1, 1984, the interest rate being charged by the Federal Land Bank was 11½ percent per annum. Commencing May 1, 1984, plaintiff, at the instance of defendants, increased the amount of his monthly payment to meet that rate.

On July 1, 1984, the Federal Land Bank raised the rate to 12 percent per annum. Commencing that date plaintiff, at the instance of defendants, increased the amount of his monthly payment to meet that rate.

On June 1, 1985, the Federal Land Bank raised the rate to 12½ percent per annum. Commencing that date plaintiff, at the instance of defendants, increased the amount of his monthly payment to meet that rate.

On December 1, 1985, the Federal Land Bank began offering a "preferred pricing program" under which a borrower who had "60 percent ownership equity" in his assets as a whole and whose loan balance did not exceed 55 percent of the appraised value of the property securing the loan could qualify for an interest rate of 11 percent per annum. Borrowers who did not qualify for that rate continued to pay 12½ percent per annum.

On August 1, 1986, the Federal Land Bank revised its interest rate structure to provide for three "tiers." A borrower whose equity in his assets as a whole was 20 percent or more and whose loan balance did not exceed 70 percent of the appraised value of the property securing the loan could qualify for the Tier I rate of 9½ percent per annum. A borrower whose equity in his assets as a whole was 20 percent or more and whose loan balance did not exceed 80 percent of the appraised value of the property securing the loan could qualify for the Tier II rate of 11 percent per annum. Borrowers who did not apply for the Tier I rate or the Tier II rate, or who did not qualify for either rate, paid the Tier III rate of 12½ percent per annum.

Plaintiff testified he first became aware that the Federal Land Bank no longer had a single interest rate in the summer of 1986 when he began getting "very unclear answers" upon phoning the Bank to inquire about the rate. Plaintiff recalled he contacted defendant Harold Paul Bates in August, 1986, and was informed by Bates that there "was a different rate structure" and that Bates was "signing some paperwork" to be forwarded to defendant Thelma Bates which "would reduce all of our rates." [1]

An employee of the Federal Land Bank testified that in September, 1986, the Bank sent defendants information about convert-

---

1. Defendants were once married to each other but were "divorced" in February, 1979. At the time defendants signed the contract for deed with plaintiff (March 20, 1982) defendants owned the subject tract as tenants in common.

ing their loan from the "base rate" (Tier III) to a lower rate. From data submitted by defendant Harold Paul Bates the Bank employee determined defendants would have qualified for the Tier I rate. Defendant Thelma Bates, however, refused to sign the "conversion agreement."

Plaintiff testified that a month after he first contacted defendant Harold Paul Bates about the interest rates he (plaintiff) called Bates again and was told that he (Bates) had signed the papers but "Thelma had refused to sign." Plaintiff quoted defendant Harold Paul Bates as saying he could not argue with Thelma and that "we were all stuck at this 12½ percent rate."

Plaintiff continued making monthly payments to defendants at an interest rate of 12½ percent per annum, but commencing in September, 1987, he placed a notation on his checks that he was paying "under protest."

On December 14, 1987, plaintiff commenced this action by filing a petition praying the trial court to determine the interest rate the contract required plaintiff to pay defendants.[2]

The cause was tried without a jury. The evidence showed among other things, that on July 1, 1988, by reason of a merger that need not be further detailed, the Federal Land Bank became Farm Credit Services of Southwest Missouri.

The trial court entered judgment providing, among other things:

"2. The interest rate called for in ... the parties' Contract for Deed is construed to be the base rate or the highest rate of interest charged on real estate loans by ... Farm Credit Services Of Southwest Missouri, but in no event shall said rate of interest exceed 12½% per annum.

3. Based upon the Court's construction of the parties' Contract for Deed, the ... paragraph [establishing the interest rate commencing May 1, 1984] ... shall be construed as follows:

Commencing with the monthly payment due May 1, 1984, and thereafter, the interest rate shall be adjusted to equal the base rate or highest rate of interest charged from time to time by the Federal Land Bank, now Farm Credit Services of Southwest Missouri for real estate loans in the state of Missouri, and shall be adjusted contemporaneously with such changes in said rate, but in no event shall said rate of interest exceed 12½% per annum. At such times as said rate is adjusted to conform with the base rate or highest rate of interest charged by the Federal Land Bank, now Farm Credit Services Of Southwest Missouri, the unpaid principle [sic] balance shall be re-amortized over the remaining unexpired period of the initial thirty-year term and the amount of the monthly payment shall be adjusted accordingly....

4. The 'base rate' as used herein shall mean the highest rate of interest charged by the Federal Land Bank now Farm Credit Services of Southwest Missouri, for real estate loans in the state of Missouri."

Plaintiff appeals, presenting one point. It reads:

"The Trial Court erred in holding that the 'interest rate charged by the Federal Land Bank for real estate loans in Missouri' is 'the base rate or the highest rate of interest charged on real estate loans by ... Farm Credit Services of Southwest Missouri' for the following reasons[.]"

■ Plaintiff sets forth five reasons; he designates them "A" through "E." We first consider reason "E" which reads:

"The court should have applied the law of V.A.M.S. Sec. 408.020 and applied a fixed rate of interest of 9% in that after the Federal Land Bank went to a Two tier system of interest rates, there was never any agreement on the interest rate

2. Plaintiff also prayed for attorney fees. The trial court denied the request and plaintiff as-

signs no error in that regard.

that should be paid on the Contract for Deed."

Section 408.020, RSMo 1986, provides:

"Creditors shall be allowed to receive interest at the rate of nine percent per annum, when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts...."

Plaintiff maintains that inasmuch as the contract for deed contained no provision stating what rate of interest he should pay defendants if the Federal Land Bank began charging its borrowers various rates of interest on real estate loans in Missouri, there is now no agreement between the parties on the interest rate. Consequently, says plaintiff, § 408.020 applies. Plaintiff cites no authority supporting that hypothesis.

While we find no case factually identical to the instant case, there is a case that is helpful by analogy. In *Estate of Bruce v. Bruce*, 767 S.W.2d 598 (Mo.App.1989), an agreement provided for interest of 12 percent per annum. The trial court determined that by reason of § 408.030, RSMo 1986, which established a maximum rate of interest of 10 percent per annum on certain types of private contracts, the obligor was required to pay the obligee interest at the rate of 10 percent per annum. The obligor argued on appeal that by reason of § 408.020, RSMo 1986, the rate should be only 9 percent per annum. Rejecting that argument, the Eastern District of this Court held:

"... section [408.020] controls the legal rate of interest where the parties do not agree on interest. ... However, § 408.020 is applicable only when 'no other rate is agreed upon.' ... The parties agreed upon an interest rate of twelve percent. Therefore, even though the parties agreed upon an excessive rate under § 408.030.1 ... they did agree upon a specific rate of interest and § 408.020 is inapplicable. Since the agreed upon interest rate exceeds the rate allowed by statute, the [trial] court appropriately substituted the maximum rate of ten percent prescribed in § 408.030...." 767 S.W.2d at 601[3].

In the instant case the parties agreed in the contract for deed on the rate of interest plaintiff was to pay defendants and there was no dispute on the subject during the ensuing two and a half years during which the Federal Land Bank charged all its borrowers the same rate of interest on real estate loans in Missouri. There was, therefore, an agreement by the parties on the interest rate, just as there was in *Bruce*. It was only after the Federal Land Bank began charging certain borrowers one rate of interest and certain other borrowers another rate of interest that a dispute arose between plaintiff and defendants as to what rate of interest their contract required. The quarrel did not occur because the parties had failed to agree on an interest rate, it occurred because the institution whose rate the parties had agreed to use began charging various rates. Applying the rationale of *Bruce*, we reject plaintiff's contention that the trial court should have applied § 408.020. Reason "E" tendered by plaintiff is without merit.

We turn now to reason "A." It requires consideration of the following evidence.

Defendants engaged a realtor to assist them in selling the subject tract. Another realtor, one Ormsby, showed the tract to plaintiff. Ormsby prepared a "Real Estate Sales Contract" using a printed form and filling in the blanks. Plaintiff signed it March 11, 1982; defendants signed it March 13, 1982. The contract named a lawyer who was to prepare the contract for deed. Ormsby contacted the lawyer; the lawyer prepared the contract for deed which the parties signed March 20, 1982. Defendant Harold Paul Bates testified he never discussed the contract for deed with the lawyer and that the lawyer did not represent him. Defendants paid Ormsby's commission.

Plaintiff insists the above evidence establishes that the contract for deed was prepared by defendants' "subagent." Plaintiff asserts that when the Federal Land Bank adopted a multi-rate interest structure for its real estate loans the provision

in the contract for deed requiring plaintiff to pay defendants the "rate of interest charged from time to time by the Federal Land Bank for real estate loans in the State of Missouri" became ambiguous. Consequently, says plaintiff, it was defendants' obligation to present evidence at trial explaining the ambiguity but defendants failed to do so.

■ Plaintiff argues there was no evidence to support the trial court's finding that the interest rate called for in the contract for deed is the "base rate or the highest rate of interest charged on real estate loans by ... Farm Credit Services of Southwest Missouri." Plaintiff emphasizes that an employee of that institution testified that in the area served by his office (Christian, Greene, Stone, Taney and Webster Counties) a majority of the new loans are made at the Tier I interest rate and about 64 percent of all loans in those counties are on the Tier I rate.

The trial court, says plaintiff, should have found from this evidence that the contract phrase "rate of interest charged from time to time by the Federal Land Bank for real estate loans in the State of Missouri" should be construed to mean the Tier I rate, as that was the rate being charged by Farm Credit Services of Southwest Missouri on almost two-thirds of its loans at time of trial. Plaintiff maintains that inasmuch as there was no evidence that the "base rate" (Tier III) is the "rate of interest charged from time to time by the Federal Land Bank for real estate loans in the State of Missouri," the judgment is either against the weight of the evidence or constitutes an erroneous application of the law.

Defendant Harold Paul Bates responds [3] by directing us to the following testimony by the employee of Farm Credit Services of Southwest Missouri:

"Q ... You mentioned certain rates that changed. Was it December of 1985 when the changes were made?

A When—when they originally went away from the one—one tier.

Q ... we used the phrase base rate here today. Is it fair to say that what is referred to as the base rate was the rate before the change and it has continued on?

. . . .

[A] We do have terminology that—of 12½ percent as being the base rate.

Q ... that particular rate or level of interest charged was the same level that existed before the changes in the rate occurred?

A Yes, sir.

. . . .

Q So when we used the term, base rate, we're talking about the rate that was in existence prior to the December, '85 changes?

A That's correct.

Q ... when you got to the December, '85 changes, you got to what you referred to as preferred rates?

A Yes, sir.

Q And then—then in August of '86, you went to the two-tier preferred system?

A Correct.

. . . .

Q But you still had the base rate?

A Right. At that time, we referred to the base rate as a Tier III, or the base rate. We used those two terms interchangeably."

Defendant Harold Paul Bates says the above testimony supports the trial court's judgment, as the testimony establishes that the Tier III interest rate is "the same level or rate of interest the Federal Land Bank charged for all real estate loans at the time of the parties' contract and was the rate of interest intended by the parties, subject to a maximum cap of 12½ percent."

■ We agree with plaintiff that the trial court erred in holding that the provision in dispute requires plaintiff to pay defendants interest at "the base rate or highest rate of interest charged from time to time by ... Farm Credit Services of Southwest Missouri for real estate loans in the state

3. Defendant Thelma Bates filed no brief.

of Missouri." However, we reject plaintiff's contention that the trial court should have construed the provision so as to require plaintiff to pay defendants the Tier I rate.

■ An ambiguity exists when there is more than one reasonable interpretation that can be gleaned from the contract language. *Harris v. Union Electric Co.*, 622 S.W.2d 239, 247[8] (Mo.App.1981). *Accord: Heshion Motors, Inc. v. Western International Hotels*, 600 S.W.2d 526, 537[12] (Mo. App.1980).

In the instant case there was no ambiguity in the contract for deed when the parties signed it, as the Federal Land Bank was then charging all its borrowers the same rate of interest on real estate loans in Missouri. However, once the Federal Land Bank began charging certain borrowers one rate of interest and certain other borrowers another rate of interest the provision in the contract for deed setting the interest rate became reasonably susceptible to more than one interpretation.

■ When an ambiguity exists the agreement is to be given a construction which will reflect the real intention of the parties and, in doing so, the court may consider the circumstances surrounding the execution of the contract. *N.B. Harty General Contractors, Inc. v. West Plains Bridge and Grading Company, Inc.*, 598 S.W.2d 194, 196–97[2] (Mo.App.1980); *In re Marriage of Buchmiller*, 566 S.W.2d 256, 259–60[8] (Mo.App.1978). An agreement is to be interpreted in the light of the circumstances and the intent of the parties when they entered into it. *Rhoden Investment Co., Inc. v. Sears, Roebuck and Co.*, 499 S.W.2d 375, 383[4] (Mo.1973).

When the parties entered into the contract for deed defendants were making payments to the Federal Land Bank pursuant to a deed of trust on the subject tract. Defendants were obviously paying the rate of interest then being charged by the Federal Land Bank on all of its real estate loans in Missouri, there being only one rate at that time. That being so, the effect of the provision in the contract for deed requiring that plaintiff—commencing May 1,

1984—pay defendants the "rate of interest charged from time to time by the Federal Land Bank for real estate loans in the State of Missouri" was that plaintiff would pay defendants the same rate of interest defendants were paying the Federal Land Bank, subject to a "cap" of 12½ percent per annum. From May 1, 1984, until time of trial that is exactly what occurred.

Were plaintiff allowed to pay defendants a lower rate of interest than defendants pay Farm Credit Services of Southwest Missouri, plaintiff would be placed in a more favorable position than he occupied May 1, 1984, when the disputed provision took effect. That is the reason we reject plaintiff's contention that the trial court should have held plaintiff is required to pay the Tier I rate.

It is equally obvious, however, that should defendants apply to Farm Credit Services for a lower interest rate than Tier III, and should defendants receive one, requiring plaintiff to continue to pay defendants the "base rate or highest rate of interest charged from time to time" by Farm Credit Services for real estate loans in Missouri would place plaintiff in a less favorable position than he occupied May 1, 1984, when the disputed provision took effect. That is the reason we agree with plaintiff that the trial court erred in construing the disputed provision that way.

■ We cannot, of course, write provisions into a contract under the guise of construing it when the record fails to show what the parties actually intended or fails to furnish a basis for determining by some rule of implication or construction what the parties must have intended or will be held to have intended as reasonable persons acting in good faith. *Johnston v. First National Bank and Trust Co. of Joplin*, 624 S.W.2d 500, 502[5] (Mo.App.1981). We can make indefinite parts of a contract definite only when the intention of the parties can be determined by the language of the contract or from surrounding facts and circumstances which manifest a definite intention in reference to such part of the contract. *Id.* at 502–03[6].

As observed earlier, the effect of the disputed provision in the contract for deed was that commencing May 1, 1984, plaintiff would pay defendants the same rate of interest defendants were paying the Federal Land Bank. As those were the circumstances when the parties signed the contract for deed, we hold that the correct construction of the disputed provision is that so long as defendants are required by the deed of trust to make payments to Farm Credit Services of Southwest Missouri, plaintiff shall pay defendants the same rate of interest defendants are required to pay Farm Credit Services, subject to the "cap" of 12½ percent per annum.

We cannot determine from the record before us whether defendants' debt to Farm Credit Services is scheduled to be fully paid prior to the time plaintiff's debt to defendants is scheduled to be fully paid. Should that occur, however, the question would then arise as to what interest rate plaintiff should pay defendants, as defendants would no longer be required to pay interest to Farm Credit Services.

One possible answer would be that plaintiff should pay defendants the same rate of interest defendants were paying Farm Credit Services at the time defendants' final payment was due. That, however, would ignore the provision in the contract for deed recognizing that the rate may change from time to time.

Another possible answer would be that plaintiff should pay defendants interest at the rate for the tier at which defendants were classified by Farm Credit Services at the time their final payment became due. That, however, might deter defendants from any future attempt to qualify for a more favorable tier, particularly if they presently owe Farm Credit Services a relatively small balance.

It is arguable, of course, that we should ignore the problem discussed in the three preceding paragraphs, as it may not arise. Plaintiff's petition, however, prayed the trial court to determine the interest rate the contract required plaintiff to pay defendants. That task will not be complete unless this issue is resolved.

In addressing it we recognize that we cannot make a contract for the parties that they did not make for themselves, or impose upon them an obligation not assumed. *Johnston*, 624 S.W.2d at 503[9]. However, if feasible we will construe the contract so as to carry into effect the reasonable intention of the parties. *Computer Network, Ltd. v. Purcell Tire & Rubber Co.*, 747 S.W.2d 669, 674[3] (Mo.App.1988).

One who pays interest would reasonably be expected to want to qualify for the lowest rate possible. We acknowledge that in the instant case defendant Thelma Bates, for reasons presumably valid to her, chose not to do so. Nothing in this opinion is to be construed as suggesting she has any obligation to seek a lower rate. However, once defendants pay their debt to Farm Credit Services of Southwest Missouri in full, it would be unreasonable to require plaintiff to continue paying interest to defendants at a higher rate than defendants could have qualified for under their deed of trust with Farm Credit Services.

We therefore hold that the provision in question should be construed to provide that once defendants' final payment becomes due on their debt to Farm Credit Services secured by the deed of trust, plaintiff, commencing with the first payment due thereafter from him to defendants, shall pay to defendants interest at the rate charged from time to time by Farm Credit Services for the tier that defendants would have been qualified for at the time their final payment to Farm Credit Services became due, subject to the "cap" of 12½ percent per annum.

What we have said disposes of reason "A" tendered by plaintiff. While we have not yet considered reasons "B," "C" and "D," it is unnecessary inasmuch as they are simply additional arguments in support of plaintiff's contention that the trial court erred in holding that the contract for deed requires plaintiff to pay defendants interest at the "base rate or highest rate of interest charged from time to time" by Farm Credit Services of Southwest Missouri for real estate loans in Missouri. As

we have agreed with that contention, any additional discussion would be superfluous.

The judgment is reversed and the cause is remanded to the trial court for entry of judgment construing the interest provision in the contract for deed in accordance with this opinion. Costs of this appeal are taxed half against plaintiff and half against defendants.

GREENE and PREWITT, JJ., concur.