McDONALD'S CORPORATION, d/b/a Delaware McDonald's Corporation, Respondent/Cross Appellant,

v.

Norbert P. SANDBOTHE, Marian Sandbothe, Eugene C. Keeven and Patricia Keeven, Appellants/Cross–Respondents.

No. 58946.

Missouri Court of Appeals, Eastern District, Division Two.

Aug. 20, 1991.

---

Spalding, Westhus, Robertson & Meyer, P.C., Lawrence J. Robertson, Chesterfield, for appellants/cross-respondents.

Armstrong, Teasdale, Schlafly, Davis & Dicus, Thomas Cummings, Katherine D. Knocke, St. Louis, for respondent/cross-appellant.

AHRENS, Judge.

In this declaratory judgment action, appellants Norbert and Marian Sandbothe, and Eugene and Patricia Keeven appeal from judgments entered against them on respondent McDonald's Corporation's petition for declaratory judgment and appellants' counterclaim for declaratory judgment. McDonald's cross-appeals from the denial of its request for attorney fees. We affirm.

Appellants raise four points. First, the trial court erroneously declared the commencement date of rent increases. We disagree, because substantial evidence supported the declaration. Second, the trial court erred in declaring the lease in full force and effect. We disagree, because respondent did not acquiesce in appellants' interpretation of the lease prior to the time the lease became a matter of controversy. Third, the trial court erred in construing the lease in favor of respondent. We disagree, because the trial court did not erroneously apply the law. Fourth, the trial court erred in ordering appellants to repay monies received from respondent. We disagree, because respondent requested such relief.

*Background*

On May 3, 1978, appellants and Franchise Realty Interstate Corporation signed a "Ground Lease" for property appellants own in Olivette, Missouri. McDonald's executed a lease guaranty on September 22, 1978. The lease was to commence "on the date of last execution" of the lease and end twenty years "from the date upon which said McDonald's restaurant is opened for business to the public." The lease provided that the $25,000 annual rent would "commence to accrue" upon the satisfaction of four conditions, including the condition that

all necessary permits and approvals be obtained for construction of improvements.

Appellants applied for a special use permit from the City of Olivette to construct and operate a McDonald's restaurant on the leased property. The application was denied on March 21, 1978. This court reversed the city's decision and remanded for rehearing. *Sandbothe v. City of Olivette*, 599 S.W.2d 38 (Mo.App.1980). On April 14, 1981, the city issued a special use permit subject to the conditions that the restaurant have no "drive-thru" and its hours of operation be limited.

McDonald's, as successor by assignment to Franchise Realty, and appellants executed a "Second Amendment to Lease" on July 1, 1981. The amendment deleted the original rent provision and substituted this rent schedule: (1) $12,500 payable in monthly installments of $1,041.67 *for the first five years of the term;* (2) $18,750 payable in monthly installments of $1,562.50 *for the second five years of the term;* (3) $28,125 payable in monthly installments of $2,343.75 *for the third five years of the term;* and (4) $42,187.00 payable in monthly installments of $3,515.58 *for the last five years of the term.*

This amended rent schedule was to continue until respondent secured permits for a "drive-thru," or until sales for a twelve month period exceeded $1,150,000. Upon the occurrence of either event, rent would increase to $25,000 per year "for the remaining years of the first ten (10) year period of the lease term." Rent for the second ten years would not be affected by the occurrence of either event.

On July 8, 1981, appellants and respondent executed a "Third Amendment to Lease." The amendment provided for "interim rent" of $1,041.67 per month, "commencing as of April 15, 1981 and terminating upon the start of the regular rental payments."

On January 13, 1982, the restaurant opened for business. Six days later, appellants and respondent executed a supplement to the lease affirming the commencement date of the lease; the commencement date of the rent, taxes, and other monetary obligations of the lease; and the expiration date of the lease.

McDonald's appealed the special use permit conditions limiting the hours of operation and prohibiting a "drive-thru." This court found those conditions invalid, *Sandbothe v. City of Olivette*, 647 S.W.2d 198 (Mo.App.1983), and on April 27, 1983, respondent obtained permits for the "drive-thru." Pursuant to the Second Amendment, the annual rent increased to $25,000.

In a March 28, 1989, letter, Mr. Sandbothe advised Laura Hois, an attorney for respondent, that the annual rent increased from $25,000 to $28,125 effective September 22, 1988—ten years after the date of last execution of the lease. Hois responded in an April 6, 1989, letter, that the rent was to remain at $25,000 until January 13, 1992—ten years after the restaurant opened for business. The parties exchanged similar correspondence in May, 1989.

In a September 15, 1989, letter to respondent, appellants asserted McDonald's had defaulted, and appellants had exercised their rights under Article 12 of the lease which provides for lessors' right of re-entry upon lessee's failure to pay rent. Hois forwarded separate checks to the Keevans and the Sandbothes on September 20, 1989, "to cover the increase in your rental payments, effective September 22, 1988." In the accompanying correspondence Hois noted that Mr. Sandbothe had "advised [respondent] that, pursuant to the Second Amendment to Lease, the increase in rent ... was to occur ten years after the lease commencement date, rather than the rent commencement date," and, "we have revised our records accordingly." In the letter to the Sandbothes, Hois apologized "for any inconvenience this oversight may have caused you." Appellants did not cash the checks.

Subsequently, appellants served a Notice to Terminate Tenancy on respondent, and appellants' attorney notified Hois on October 10, 1989, that appellants would proceed with an unlawful detainer action. Respondent filed this declaratory judgment action on November 13, 1989, and appellants

counterclaimed for declaratory judgment. Appellants instituted a separate unlawful detainer action on November 21, 1989. The trial court granted respondent's application for injunctive relief, temporarily enjoining appellants' separate action.

After evidence was presented, the trial court declared: (1) the lease, as amended, is in full force and effect; (2) respondent did not breach the lease; (3) the annual rent remains at $25,000 until January 13, 1992; (4) the annual rent increases to $28,-125 from January 13, 1992 to January 13, 1997; and (5) the annual rent increases to $42,187 from January 13, 1997 to January 13, 2002.

### Points I. and III.

In their first point, appellants allege the trial court erred in declaring "the term" referred to in subparts (1) through (4) of the Second Amendment did not commence on September 22, 1978—the date of last execution of the lease.

In reviewing the trial court's declarations, we are cognizant that "[i]f the terms of a contract are clear and unambiguous, the agreement will be given effect in accordance with its terms and without resort to determination of the intent of the parties." *L & K Realty Co. v. R.W. Farmer Constr. Co.*, 633 S.W.2d 274, 280 (Mo.App. 1982). In the present case, however, an ambiguity is present. "An ambiguity exists when there is more than one reasonable interpretation that can be gleaned from the contract language." *Coughenour v. Bates*, 785 S.W.2d 291, 297 (Mo.App. 1990).

Aside from its use in the Second Amendment the only other references to "term" appears in the "Lease Term" provision of the original lease and the Supplement to Lease. Under the "Lease Term" provision, the lessee holds the property "for a term commencing on the date of last execution hereof and ending twenty (20) years from the date upon which said McDonald's Restaurant is opened for business to the public." The Supplement to Lease provides that the "Commencement date of the term of said lease is September 22, 1978." In

light of those references, appellants' interpretation of "the term" as it is used in the Second Amendment could be considered reasonable.

Respondent interprets "the term" as it is used in the Second Amendment to mean the twenty-year term beginning when the restaurant opened for business to the public. That interpretation is supported by references to the *first, second, third,* and *last five years* of the term in subparagraphs (1) through (4) of the Second Amendment. Respondent's interpretation is also reasonable.

Since an ambiguity exists, "the agreement is to be given a construction which will reflect the real intention of the parties and, in doing so, the court may consider the circumstances surrounding the execution of the contract." *Id.* The "agreement is to be interpreted in the light of the circumstances and the intent of the parties when they entered into it." *Id.*

A court "can make indefinite parts of a contract definite only when the intention of the parties can be determined by the language of the contract or from surrounding facts and circumstances which manifest a definite intention in reference to such part of the contract." *Johnston v. First Nat'l Bank & Trust Co.*, 624 S.W.2d 500, 502 (Mo.App.1981). While a court "cannot make a contract for the parties that they did not make for themselves, or impose upon them an obligation not assumed," if feasible, a court "will construe the contract so as to carry into effect the reasonable intention of the parties." *Coughenour*, 785 S.W.2d at 298.

The trial court's declaration as to "the term" of the lease for purposes of calculating rent increases is supported by substantial evidence of the parties' intent and of the circumstances surrounding the execution of the Second Amendment.

The trial court was presented evidence that after Olivette issued the initial special use permit Mr. Sandbothe and William Robards, Jr., a McDonald's representative, discussed whether the parties should proceed with the project without a "drive-

thru" and with limited hours of operation. Following those discussions, respondent prepared the Second and Third Amendments. In a letter to Mr. Sandbothe accompanying those amendments, Robards noted:

> The need for our amendment # 3 was to call for interim rent from April until the commencement of the regular rental payments as per our agreement. This was required to avoid having rent commencement under the term of the lease in April and the term of the lease extending 20 years from opening, which would have caused a gap in the actual rental schedule at the end of the term.

If, as appellants contend, "the term" commenced when the lease was executed, there would have been no need for an interim rent provision because, pursuant to the Second Amendment, appellants would have been entitled to annual rent commencing on the date the lease was executed. However, a signed stipulation of facts presented to the trial court acknowledges that appellants make "no claim for rent from the date the Ground Lease commenced on September 21, 1978 until rent began to be paid under the Third Amendment to Lease effective April 14, 1981." It was also stipulated that appellants "acknowledge that they were not entitled to receive any rent under the Ground Lease or any amendments thereto prior to April 14, 1981."

The Second and Third Amendments, read together with these stipulations, support a determination that the parties intended: (1) interim rent to commence on April 14, 1981; (2) rent due under the Second Amendment to commence on the date the restaurant opened for business; and (3) rent to continue pursuant to the schedule set forth in the Second Amendment for a period of twenty years from that date.

■ Appellants maintain the intent of the parties can be ascertained from the correspondence accompanying respondent's checks for increased rent. In support of their position, appellants cite *Tamko Asphalt Products, Inc. v. Fenix*, 321 S.W.2d 527 (Mo.App.1958). The *Tamko* court stated: "To construe and enforce a contract in

accordance with its practical construction by the parties, a court must be able to find that the minds of the parties met upon that construction [citations omitted] or, in other words, that both parties concurred in that construction." *Id.* at 538.

We do not find appellants and respondent concurred in appellants' construction of the lease. Respondent maintained the rent increase was not due until January 14, 1992, and initially refused to pay the increase. Respondent agreed to pay the increased rent demanded by appellants only after appellants notified respondent that they had taken measures to exercise their right of re-entry under the lease. In light of appellants' actions to re-enter the premises, respondent's subsequent offer to pay the increased rent cannot be deemed a concurrence in appellants' construction of the lease. Rather, respondent's offer was nothing more than an offer to compromise and an attempt to avoid litigation. When appellants refused that offer of compromise, respondent sought this declaratory judgment.

Accordingly, the trial court's judgment is supported by substantial evidence, is not against the weight of the evidence, and did not erroneously apply the law. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). We find no abuse of discretion by the trial court. Point one is denied.

■ Appellants' third point is related to their first. Appellants contend the "trial court erred in construing the contract in favor of the writer of it where the words were open to more than one interpretation...." Appellants rely on our supreme court's statement in *John Deere Co. v. Hensley*, 527 S.W.2d 363 (Mo. banc 1975) that, "The rule is well-established in Missouri that 'if a contract is fairly open to two interpretations that construction must be adopted which is against him who prepared it and favor him who merely signed it'...." *Id.* at 365 (quoting *Engel v. Cord Moving and Storage Co.*, 313 S.W.2d 173, 176 (Mo.App.1958)). Appellants' reliance on this rule is misplaced.

There was sufficient evidence from which the trial court could reasonably have concluded that appellants did not "merely sign" the lease and amendments. Mr. Sandbothe, a former broker for McDonald's, negotiated the lease and amendments on behalf of appellants. Mr. Sandbothe has been in the real estate development business since 1969 and has "negotiated somewhere around a hundred" leases. Further, the extent to which the parties negotiated the lease is apparent from the extensive interlineation, and numerous deletions and additions which appear, along with the parties' initials, on various provisions of the form Ground Lease. It is apparent the lease and subsequent amendments were executed only after arms-length negotiations. The trial court did not erroneously apply the law in construing the lease. Point three is denied.

### Point II.

■ In their second point, appellants direct our attention to the correspondence from Hois accompanying respondent's checks for the increased rent. Appellants contend the trial court erred in declaring McDonald's did not breach the lease "because, as a matter of law, respondent, McDonald's admitted and acquiesced in appellant landlord's claims for increased rent, paid same, and is estopped from now claiming otherwise."

In support of their position, appellants rely on *Johnson*, 624 S.W.2d 500. *Johnson* involved a declaratory judgment action to determine the enforceability of a lease provision authorizing rent increases. One plaintiff informed defendant that charging rent for past periods was "unfair"; however, that plaintiff paid the increased rent for past and future periods. *Id.* at 502. The *Johnson* court found that plaintiff "having acquiesced in defendant's claim for the increases and having paid them, is bound by that decision...." The court held: "An interpretation placed on a contract by the parties *prior to the time it became a matter of controversy* is entitled to great, if not controlling influence in ascertaining the intent and understanding of the parties and the courts will generally

follow such construction." *Id.* (emphasis added).

The highlighted portion of the court's holding distinguishes this case from *Johnson.* As noted in our discussion of appellants' first point, respondent initially refused to pay the demanded increase. Thus, prior to the time it became a matter of controversy, respondent consistently maintained the rent increase was not due until January 14, 1992. Respondent did not offer to pay appellants' demand for increased rent until appellants notified respondent that they had taken measures to exercise their right of re-entry under the lease. In light of appellants' actions to re-enter the premises, respondent's subsequent offer to pay the increased rent cannot be deemed an acquiescence in appellants' interpretation of the lease. As stated previously, respondent's offer was nothing more than an offer to compromise and an attempt to avoid litigation. When appellants refused that offer of compromise, respondent sought this declaratory judgment, restating its position that the rent increase was not due until January 14, 1992.

*Coleman v. Villa Capri Restaurant,* 712 S.W.2d 65 (Mo.App.1986), also relied on by appellants, is distinguishable from the present case. There, the defendant paid increased rent for two years before terminating all rental payments, and did not challenge the amount of the increase until after the action to recover past due rent was filed. *Id.* at 66–67. The court held, "defendant, having acquiesced in plaintiff's claim for increased rent and having paid it, is bound by that decision. [citing *Johnson,* 624 S.W.2d at 502]." Thus, *Coleman* does not support the assertion that respondent acquiesced in appellants' interpretation of the lease. We find the trial court's decision did not erroneously apply the law and is not against the weight of the evidence. *Murphy,* 536 S.W.2d 30. We find no abuse of discretion by the trial court. Point two is denied.

### Point IV.

■ Appellants' fourth point asserts the trial court abused its discretion in ordering

them to repay respondent monies received as increased rents, because respondent did not request such relief. This point is wholly without merit. Respondent's first amended petition specifically requests that "any monthly payments of rent made by McDonald's to Landlords in excess of a monthly amount based on an annual rent of $25,000.00 be returned to McDonald's." Point four is denied.

### Cross-appeal

■ In the sole point on their cross-appeal, McDonald's contends the trial court erred in refusing McDonald's requests for an award of attorney fees. McDonald's relies on a provision in the lease under which each party agreed to reimburse the other for "the reasonable expenses of attorneys' fees" if that other party was successful in any action or proceeding "relating to the provisions of this Lease, or any default hereunder...."

Although attorney fees "generally are allowed when authorized by contract," *Industry Fin. Corp. v. Ozark Community Mental Health Center, Inc.*, 778 S.W.2d 413, 417 (Mo.App.1989), the award of such fees is "left to the broad discretion of the trial court and will not be overturned except for an abuse of discretion...." *Washington Univ. v. Royal Crown Bottling Co.*, 801 S.W.2d 458, 469 (Mo.App. 1990). The lease and amendments, as negotiated and drafted by the parties, created an ambiguity which resulted in this declaratory judgment action being filed. Under the facts of this case we find no abuse of discretion in the trial court's denial of McDonald's request for attorney fees.

The judgment of the trial court is affirmed.

GARY M. GAERTNER, P.J. and CRIST, J., concur.