MILLS REALTY, INC., Appellant,

v.

Stephen I. WOLFF, et al., Respondent.

No. 66950.

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 3, 1995.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 8, 1995.

Application to Transfer Denied
Dec. 19, 1995.

David T. Hamilton, St. Peters, Thomas P. Hohenstein, Joseph J. Porzenski, Gallop, Johnson & Neuman, St. Louis, for appellant.

Merle L. Silverstein, Rosenblum, Goldenhersh, Silverstein & Zafft, Clayton, for respondent.

GARY M. GAERTNER, Judge.

Appellant, Mills Realty, Inc. ("broker"), appeals from an order entered by the Circuit Court of the County of St. Louis granting respondent's, a partnership comprised of Robert Wolff and the Mary R. Wolff Real Estate Company ("vendor"), motion for judgment notwithstanding the verdict in broker's quantum meruit action to recover monies representing a commission.[1]  We affirm.

The following is a summary of the pertinent facts; however, these and other facts may be more fully discussed in the opinion. In January, 1992, vendor acquired the Forest Lake West Apartments (hereinafter referred to as "the property"), a 212–unit apartment complex in St. Louis County. The purchase was made through a sealed bid for $1.4 million. At the time of the sale, the property was appraised at $2.1 million. Shortly thereafter, Kenneth Aston, an agent for broker, contacted vendor about selling the property for profit. Aston asserted the property could be sold for approximately $2.4 million, leaving vendor with a $1 million profit.

The parties signed a listing agreement on February 10, 1992. The agreement appointed broker as vendor's exclusive agent on the sale of the property and listed a sale price of $2.4 million. The contract also stated broker would receive a five percent commission based on the procured purchase price if the property was sold during broker's agency or within sixty days thereafter. Within a week after this agreement was signed, Aston, on behalf of broker, developed and sent out brochures on the property to approximately eighty potential purchasers.

At the end of February, broker received an offer for $1,960,000 from Huntleigh Properties. Vendor and Huntleigh engaged in a series of offers and counteroffers. The exchange did not result in a sale, however, and negotiations between it and Huntleigh Properties terminated on March 25, 1992.

While the above parties were exchanging counteroffers, on March 5, 1992, broker received another offer for the property from Carl Sobery through his agent, Michael Mullenix. This offer was for $2,050,000. Broker, after discussing the Sobery offer with vendor, notified Mullenix that vendor was engaged in negotiations with another purchaser and would not respond further. Notwithstanding this message, on March 17, 1992, broker received a second offer from Sobery for $2.4 million. This offer contained several contingencies which were subject to Sobery's satisfaction before the offer became binding. This offer was held open until March 27, 1992. Broker conveyed the offer to vendor, but vendor did not sign the contract. The listing agreement expired without the properties being sold.

On May 14, 1992, broker filed a petition against vendor in the Circuit Court of St. Louis County claiming breach of contract and quantum meruit. In Count I, broker alleged vendor breached the listing contract by failing to pay it the five percent commission due when broker secured the Sobery offer for $2.4 million. In Count II of its petition, broker alleged it provided vendor with services in securing the Sobery offer, services which were worth $120,000 (the value of its five percent commission on the $2.4 million purchase price agreed to in the listing contract).

A jury trial was held beginning July 19, 1994. Broker presented evidence concerning the listing agreement, including the contract's commission rate. All of the contracts presented by both Huntleigh and Sobery were offered into evidence. At the close of broker's case, the trial court granted vendor's motion for a directed verdict with re-

---

1. Stephen I. Wolff, the president of the Mary R. Wolff Real Estate Company, was originally named as a defendant to this action. The trial

spect to the breach of contract claim.[2] The quantum meruit claim went to the jury, who returned with a verdict favoring broker and awarding it $50,000 damages plus $9,000 interest.

On July 28, 1994, vendor filed a motion for judgment notwithstanding the verdict based on three grounds: (1) broker failed to prove it was a licensed broker pursuant to RSMo § 339.160 (1994); (2) broker failed to show it had procured a ready, willing and able buyer in that the Sobery contract was not binding on said purchaser; and (3) broker failed to prove the reasonable value of services allegedly provided to vendor. On September 28, 1994, the trial court granted vendor's motion and set aside the jury verdict. This appeal followed.

█ In reviewing the action of the trial court in this case, we consider only evidence supporting the jury verdict and disregard the defendant-vendor's evidence unless it supports the verdict. *Kasal v. Freihaut,* 860 S.W.2d 24, 25 (Mo.App.E.D.1993). Although the trial court did not recite on which of the three asserted grounds it relied in granting vendor's motion for j.n.o.v., we may affirm the judgment if it is sustainable under any theory. *Pratt v. Purcell Tire and Rubber Co.,* 846 S.W.2d 230, 232 n. 1 (Mo.App.E.D. 1993). Therefore, we need only address any argument supporting the trial court's order.

█ Broker contends it sufficiently proved the elements of a quantum meruit cause of action. In order to prevail under quantum meruit, broker must show (1) it provided vendor services at the request or with the acquiescence of vendor, (2) the services were of a certain and reasonable value, and (3) vendor refused to pay for such services after demand by broker.[3] *McCardie & Akers Const. Co., Inc. v. Bonney,* 647 S.W.2d 193, 194 (Mo.App.E.D.1983). Furthermore, in a suit to recover fees for services provided by a real estate broker, broker must also show it was a duly licensed real estate broker. RSMo § 339.160 (1994).

█ In an action brought under quantum meruit, the plaintiff has the burden of proving the reasonable value of his or her services. *Hoops v. Gateway Food Products,* 824 S.W.2d 451, 453 (Mo.App.E.D.1991). "Failure to prove reasonable value is fatal to a quantum meruit claim." *Id.* Where a plaintiff does not repudiate the contract but sues in quantum meruit, he or she may rely on the contract as *prima facie* evidence of the reasonable value of services provided. *Bash v. B.C. Const. Co., Inc.,* 780 S.W.2d 697, 698 (Mo.App.W.D.1989). Broker relies on this principle to support his claim of error by the trial court.

█ The rule, however, is subject to a caveat requiring the contract be fully performed with only payment by the defendant left unexecuted. *Id.* at 699. These rules also apply to actions by real estate brokers seeking to recover commissions under a quantum meruit theory. Cases in which brokers have been allowed to rely on the contract to establish the reasonable value of services are those where the property had actually been sold. *See Humfeld v. Langkop,* 591 S.W.2d 251, 255 (Mo.App.W.D.1979); *Reed Schmidt and Assoc. v. Carafiol Furniture Co.,* 469 S.W.2d 876, 880 (St.L.Ct.App. 1971).

█ In the instant case, broker entered into evidence the listing agreement between it and vendor. The contract provided broker would receive a five percent commission on the purchase price of the property. There was also some testimony that brokers in the area regularly use a six percent figure in calculating commissions for the sale of property. This would have been sufficient evidence of reasonable value of broker's services had the property been sold. Here, however, the property was never sold, and the contract was not fully performed. Therefore, broker cannot rely on the contract nor on the customary commission rate as

---

court granted his separate motion for summary judgment before the case went to trial.

**2.** Broker does not appeal this decision of the trial court.

**3.** Vendor is not challenging the third element on appeal.

evidence of the reasonable value of its services.

Furthermore, broker offered no evidence as to the reasonable value of its services where broker's efforts do not culminate in a sale. Broker offered no evidence showing $120,000 reflected the reasonable value of the effort expended, the number of hours spent, and the expenses incurred by broker. *See Bash*, 780 S.W.2d at 699 (stating evidence lacked details to support reasonableness of amount claimed). This lack of sufficient proof is reinforced by the communication sent from the jury while deliberating, wherein it requested the ability to defer to the judge on the amount of damages.

■ Additionally, on appeal, broker claims it provided vendor with valuable information in showing vendor the property was actually worth $2.4 million. Broker argues the jury verdict should be upheld because it reflects five percent of the amount vendor could realize on the sale of the property using this information, or $50,000 (five percent of vendor's potential $1 million profit). Broker relies on *Klamen v. Genuine Parts Co.*, 848 S.W.2d 38 (Mo.App.E.D.1993), to support its contention. In *Klamen*, a broker recovered compensation for providing the defendant-property owner with valuable tax information. *Id.* at 39. However, in that case, the broker testified as to the reasonable value of his services in providing the information. *Id.* Furthermore, there was a specific request for the information, and the defendant actually took advantage of the information provided him. *Id.*

The case before us is distinguishable. Assuming, *arguendo*, broker did provide vendor with valuable information concerning the potential sale price of the property, vendor did not request this information but, rather, wanted the property sold. Vendor also never took advantage of this information. Most importantly, however, broker wholly failed to prove five percent of the amount vendor could recover on such a sale, $50,000, reflected the reasonable value of broker's services in providing vendor with information regarding the potential fair market value of the property.

The trial court's action in granting vendor's motion for j.n.o.v. is sustainable on the ground broker failed to sufficiently prove the reasonable value of its services. Therefore, we need not examine the other grounds asserted in vendor's motion.

Based on the foregoing, the order of the trial court is affirmed.

SMITH, P.J., and RHODES, J., concur.