**Henry E. BRUCE, Respondent,**

**v.**

**Henry L. SPILLMAN and Jalalia Spillman, Appellants.**

**No. 26191.**

Missouri Court of Appeals, Kansas City District.

June 25, 1973.

---

Sol M. Yarowsky, Kansas City, for appellants.

Kenneth K. Simon, O. Hampton Stevens, Kansas City, for respondent.

Before WASSERSTROM, P. J., and SHANGLER and SWOFFORD, JJ.

SWOFFORD, Judge.

This is an appeal from a judgment in the amount of $6,535.85 on plaintiff's (respondent here) petition and against the defendants (appellants here) on their coun-

terclaim. The parties will be referred to herein as they were below. This case was tried before the court without a jury.

The defendants raise three points upon which they ask reversal. The first two of these assert that the plaintiff lacks the legal capacity to bring and maintain this action in his individual capacity since the real party in interest is a voluntary church organization known as the "Voice of Deliverance Church" and that the plaintiff could only maintain this action as a representative of a class comprising the church membership, the real owners of the real and personal property here involved. The defendants' other point is that there was a total failure of proof that the sale price of the personalty sold to the defendants and involved in this action was fair and reasonable. We rule these points against the defendants and affirm.

In the plaintiff's petition, filed January 19, 1970, he alleges that he sold certain goods and merchandise, therein specifically described to the defendants on August 5, 1968 of the value and price of $8,965.00; that the goods were delivered to the defendants and they paid $2,000.00 as a down payment and thereafter made additional payments of $429.15, leaving a balance due and owing of $6,535.85.

The defendants by answer, among other allegations not pertinent here, deny the sale and state that the payments made by them to the plaintiff were obtained by fraud and deceit; they deny the identity and description of the goods and that they are indebted to the plaintiff. The defendants further assert that the plaintiff lacks capacity to sue, is not the real party in interest, and that there is a failure of consideration.

The defendants also filed a counterclaim for fraud and deceit, claiming $7,930.00 actual and $15,000.00 punitive damages. The basis for this pleading is that the plaintiff represented to them that he would sell and transfer to them the real property at 4608 St. John Avenue, Kansas City, Missouri,

for church use, and that he failed to do so; that in reliance thereon, they made the payments to plaintiff and other payments on the mortgage on such property; that these representations were false and fraudulent and made maliciously for the purpose of obtaining funds from defendants; that they relied thereon; that said mortgage on the real estate was foreclosed, and that by reason thereof, they sustained the damages alleged.

The plaintiff testified that he was the founder, one of three trustees, and the pastor of the Voice of Deliverance Church, an incorporated religious organization with its church at 4608 St. John Avenue, Kansas City, Missouri. He testified that this organization was having financial difficulties in 1968 and that they decided to disband; and that he personally owned the organ, pulpit, chairs and the other merchandise sold to the defendants.

The record before us shows that a Bill of Sale was made from the plaintiff individually to the defendants, covering the personalty involved, showing the transfer thereof for a consideration of $8,965.00. Of this sum, $2,000.00 was paid as a down payment and a promissory note secured by a chattel mortgage was executed by the defendants to the plaintiff individually in the amount of $6,965.00, payable at $100.00 per month.

There is no evidence in the record of the trial that the personalty thus transferred to the defendants was not solely owned by the plaintiff. The defendant Henry Spillman testified only that the plaintiff "never told" him that he owned this property and that defendant "understood" the church owned it. Nevertheless, it appears that he dealt exclusively with the plaintiff on an individual basis as to the personalty. In this posture of the case, the trial court properly found that he was the owner and was the proper (indeed the only) party plaintiff.

Attached to defendants' *motion for a new trial* is an affidavit of one Grover J.

Stephenson, dated January 25, 1972, which in substance states that he was a trustee of the church and that the personalty sold by plaintiff to the defendants was owned by the church. The legal significance of this affidavit will be hereafter discussed.

As to the personalty, the plaintiff testified that the price was a very fair and reasonable one and there was no evidence to the contrary.

The plaintiff's cause of action does not directly involve the real estate. By reason of the defendants' charge of fraud, however, we must give attention to the record facts before us in this case.

Plaintiff made no claim that he owned the fee in the real estate at 4608 St. John. It was owned by the Voice of Deliverance Church and only that organization could transfer title. It was encumbered by a first deed of trust held by Zoglin Development Company, Inc. and the plaintiff's church had paid that mortgage holder about $33,000.00 to reduce the encumbrance. There can be no doubt that the defendants desired to acquire the real estate from the plaintiff's church and the equipment from the plaintiff in order to conduct therein his own religious group— the "Revival Temple".

Plaintiff testified that the church had authorized the trustees to transfer the equity to the defendants and they were to assume and pay future mortgage payments to Zoglin. He stated that at the time he and his wife had 3 months salary due from the church, i. e. $3,000.00, and that while some of the payment from defendants was considered payment for the real estate equity, the payments "belonged to him", by approval of the church board.

Pursuant to this arrangement, the plaintiff had his attorney, J. John Gillis, prepare a Warranty Deed from the 3 trustees of the church to the defendants as trustees of an unincorporated religious association (Revival Temple) and the defendants in such capacity assumed and agreed to pay the balance of the mortgage.

Plaintiff testified that this deed was to be executed at the office of Gillis, who was also a Notary Public, but that at the request of defendants, the grantors went to the church office to execute and deliver this deed. He stated that defendant Henry Spillman advised him that he, Spillman, would have a notary present who would take the acknowledgement. The plaintiff and Grover Jacob Stephenson and Billie R. Baker, the other trustees, did go to the church office, signed and delivered the deed in the presence of a stranger assumed to be the notary public and left. The deed which was signed and delivered (but never acknowledged) was in evidence. Plaintiff does not know why this deed was not notarized and had no knowledge of Spillman's later attempts to get it acknowledged or what happened thereafter as to the real estate, or the subsequent dealings between defendants and Zoglin.

Attorney J. John Gillis testified that he prepared the deed according to the arrangements above outlined with plaintiff and defendants in his office, but that it was not signed before him and he did not acknowledge it as a notary. About a year later, he stated, defendant Henry Spillman brought the deed to his office and asked him to acknowledge it. He refused because it had not been signed in his presence. He told Spillman the deed was "good" as "between the parties".

Spillman testified that his first knowledge that the deed was not acknowledged was when he attempted to record it. He denied the arrangement for execution of the deed at the church before a notary to be furnished by him or that the deed was signed in his presence. He testified about his later attempts to have the deed acknowledged including an attempt to get plaintiff to get this done, which request was refused. This contact was denied by plaintiff. Spillman also testified that $5,000.00 of the original purchase price of

$8,965.00 was in payment for the real estate equity.

After unsuccessful attempts to obtain an acknowledged deed, he made no further payments to Zoglin on the mortgage or to plaintiff on the chattel mortgage. Zoglin foreclosed the deed of trust and this suit was filed on the balance due on the chattel purchase. Defendants retained these chattels and disposed of them by sale and gift "here and there".

In this appeal from a court-tried case, we review *de novo* upon the law and evidence, deferring to the trial court's findings upon controverted factual matters involving credibility of witnesses. We may set aside the judgment only if it is clearly erroneous. Rule 73.01(d), V.A.M.R.; Peerless Supply Co. v. Industrial Plumbing and Heating Co., 460 S.W.2d 651, 656 (Mo.1970); K-V Builders, Inc. v. Thomas, 353 S.W.2d 130, 132 (Mo.App.1962); Craft v. Politte, 454 S.W.2d 534, 535 (Mo.1970).

■ Viewing the record before us in this light, we conclude that there was ample proof that the plaintiff was the sole owner of the personalty sold to the defendants and was therefore the real party in interest to maintain this action for the balance due on the purchase price, Rule 52.01. Plaintiff testified he was the sole owner of the goods sold; defendants dealt with him as such, and accepted the plaintiff's individual Bill of Sale; defendants executed a promissory note and chattel mortgage to the plaintiff individually covering and securing the balance of the purchase price; defendants did not at any time attempt to rescind the sale or ask for the return of their monies paid toward the purchase price, nor did they offer or tender back the chattels and they exercised complete dominion over the same by selling and giving away certain of the chattels "here and there". We have carefully reviewed the authorities cited by defendants and do not find them in point. The cases of Edgmond v. Brixey, 450 S.W.2d 166 (Mo.1970); State ex rel. Northside Church of God v.

Church of God, 247 S.W.2d 542 (Mo.App. 1952), and Coates v. Parchman, 334 S.W. 2d 417 (Mo.App.1960) all involved factional disputes and fights within church organizations. State ex inf. Mooney, ex rel. Stewart v. Consolidated School District No. 3, 281 S.W.2d 511 (Mo.App.1955) involved a question of legality of action taken by directors of a school district. We are convinced, as was the court below, and we therefore find that plaintiff had legal capacity to bring and maintain this action.

■ Nor does the Stephenson affidavit attached to the defendants' motion for a new trial alter this view. This motion for a new trial does not assert that the Stephenson statement constitutes newly discovered evidence, and yet that would be the only ground upon which such facts would have any weight at that stage of the proceedings. Stephenson's affidavit shows that he was a resident of Kansas City and a trustee of the church. He was one of the signatory trustees on the warranty deed to the real estate. There was no showing of any attempt to procure his testimony at the trial. Even if his "testimony" was to be considered newly discovered evidence, we would be required to disregard it for the purpose of this review.

■ Granting a new trial upon this ground is not favored and rests within the sound discretion of the court. Hayes v. Adams, 241 Mo.App. 560, 244 S.W.2d 123 (1951). Before such evidence warrants the granting of a new trial, failure to procure it at the trial must not be because of lack of diligence; it should be evidence that is not merely cumulative or impeaching; and it should be of such a character as would probably produce a different result. Hayes v. Adams, supra; Koenig v. Skaggs, 400 S.W.2d 63, 68 (Mo.1966); In re Priests' Estate, 227 S.W.2d 474 (Mo.App. 1950); Arnold v. May Department Stores Co., 337 Mo. 727, 85 S.W.2d 748 (1935); Van Meter v. Beckers, 42 S.W.2d 951, 953 (Mo.App.1931). The Stephenson affidavit does not rise to the dignity of any of these

requirements and is properly disregarded on this appeal.

With reference to defendants' charge that there was a total failure of proof that the charges for the chattels sold by the plaintiff to the defendants were fair and reasonable, it must be noted that this action is on *contract* and not on *quantum meruit*. The price of the goods sold was agreed upon by the parties and that price was reduced to writing in the Bill of Sale, the title and possession transferred to defendants and the unpaid balance of the agreed price evidenced by a promissory note secured by a chattel mortgage. The agreed contract price and these supporting documents constituted *prima facie* proof of the value of the goods sold. 78 C.J.S. Sales § 452c, pp. 94–95; Blickhan v. Trans World Airlines, 305 S.W.2d 743, 746–747 (Mo.App.1957). This is true even in suits in *quantum meruit* for materials and labor. Service Construction Co. v. Nichols, 378 S.W.2d 283, 288 (Mo.App.1964).

The defendants claim that there was a failure of consideration because the chattels were not new and were not of the value of the sales price. This is an affirmative defense and places the burden of proof upon the defendants, who retained the goods, to show that the chattels have a diminished value or no value at all. If this burden is met, the buyers would have the right to have the recovery diminished even to the point of extinguishment. Blickhan v. Trans World Airlines, supra. The defendants offered no such proof in this case.

Having in evidence the contract price and plaintiff's testimony, and with no evidence of any other value or diminished value, this point is ruled against the defendants.

The charges of fraud leveled at the plaintiff by the defendants in their counterclaim were neither properly preserved in their motion for a new trial nor on this appeal, and should be disregarded. It can be positively stated, however, that there is a complete failure of proof on this charge. The plaintiff never represented that he was the owner of the real property on St. John, but agreed to obtain and did obtain a warranty deed from the trustees of the church to the defendants conveying the fee title thereto subject to the mortgage. There was a dispute and a conflict in the evidence as to the method to be used in the execution and delivery of this deed. The trial court, to whose judgment we defer in this particular, believed the plaintiff's version of these events.

The deed, although not acknowledged, conveyed the title as between the parties. The defendants had undertaken to have the deed executed and acknowledged at the church office. The deed was executed there by the trustees of the church, but for some unexplained reason was not notarized. Thereafter, the defendants took no steps to quiet title, for mandatory injunction, or any other proceedings to protect this title. Rather, they just stopped paying on the mortgage and permitted the property to be foreclosed. No element of fraud is present in the record before us.

The judgment is affirmed.

All concur.