**MILLARD FARMS, INC.,**
Plaintiff/Appellant,

v.

**Randy SPROCK and Christy Sprock,**
Defendants/Respondents.

No. 59965.

Missouri Court of Appeals,
Eastern District,
Northern Division.

Nov. 12, 1991.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
Dec. 18, 1991.

Case Transferred to Supreme
Court Jan. 28, 1992.

Case Retransferred to Court
of Appeals June 2, 1992.

Original Opinion Reinstated June 10, 1992.

Craig A. Van Matre, Craig A. Van Matre, P.C., Columbia, for plaintiff/appellant.

Bradford A. Brett, Brett, Erdel, Van Matre, Tanzey & Hamlett, Mexico, for defendants/respondents.

CRANE, Judge.

Landowner Millard Farms, Inc. filed a petition for injunctive relief and damages against adjoining landowners Randy and Christy Sprock to compel the Sprocks to remove a dam which prevented water from draining from the Millard land to the Sprock land. The trial court, sitting without a jury, found that the water at issue was "surface water," that the Sprocks did not block a "natural waterway" or "water course," and that they were entitled to protect their land from the surface waters under the modified "common enemy doctrine." Millard Farms, Inc. appeals from this order. We affirm.

The evidence before the trial court revealed that, after the Sprocks purchased their farm in 1987, they constructed a dam along a portion of their northern property line to block water which drained from the Millard farm to the north to their farm to the south. There was considerable testimony relating to the physical features of the land over which the water drained. It was uncontroverted that the drainage occurred naturally and was not man-made; it had a fixed location and definite course and discharged at a definite point on the Sprock property. It was further uncontroverted that there were no streams, creeks, rivers or creek beds or channels on the Millard property and that the source of the water that drained on to the Sprock property was rain, sleet, snow or other surface water.

The drainage area was dry when there was no precipitation. The drainage area was described as a swag, a low spot, or a depression, which was approximately 1½ feet deep at its lowest point. It was further described as a long, gradual slope in an otherwise flat field which had been planted, harvested and driven across.

For its first point Millard contends the trial court erred in holding that the drainage area was not a "natural waterway" or "watercourse" as that term is defined in Missouri law. We disagree.

Missouri has adopted the modified "common enemy doctrine" with respect to surface water. Under this doctrine a landowner may treat surface water as a "common enemy" and obstruct its flow without liability for damages so long as the landowner does so reasonably without recklessness or negligence. *Happy v. Kenton*, 247 S.W.2d 698, 700 (Mo.1952). However, one may not obstruct a "natural watercourse" without liability to others. *Id.* As applied, this doctrine allows a lower landowner to block the drainage of surface water by a dam, even if that dam causes water to collect on the upper landowner's property as long as that water is not flowing through a "natural watercourse." *M.H. Siegfried R. Est. v. City of Independence*, 649 S.W.2d 893, 896–97 (Mo. banc 1983); *Thomas v. Estate of Ducat*, 769 S.W.2d 819, 821 (Mo.App.1989); *Schifferdecker v. Willis*, 621 S.W.2d 65, 67 (Mo.App.1981).

*In this context* the Missouri Supreme Court has adopted this definition of a natural watercourse:

> There must be a stream usually flowing in a particular direction, though it need not flow continually. It must flow in a definite channel, having a bed, sides or banks, and usually discharge itself into some other stream or body of water. It must be something more than a mere surface drainage over the entire face of a tract of land, occasioned by unusual freshets or other extraordinary causes. It does not include the water flowing in the hollows or ravines in land, which is the mere surface water from rain or melting snow, and is discharged through

them from a higher to a lower level, but which at other times are destitute of water. Such hollows or ravines are not in legal contemplation water courses.

*Happy v. Kenton*, 247 S.W.2d at 701 (quoting from *Hoyt v. City of Hudson*, 27 Wis. 656, 660–661 (1871)). This definition continues to control in cases involving the damming of surface water. *Thomas*, 769 S.W.2d at 821; *Schifferdecker*, 621 S.W.2d at 67; *Senkevech v. Vaughn*, 610 S.W.2d 399, 402 (Mo.App.1980).

■ Under this definition it is clear that the Sprock dam blocked surface water drainage through a slough or depression which merely received surface water. Millard contends, however, that under the language quoted in *Borgmann v. Florissant Dev. Co.*, 515 S.W.2d 189, 196–97 (Mo.App. 1974), the drainage area is a watercourse. That quotation, which comes from the Illinois case of *Lambert v. Alcorn*, 144 Ill. 313, 33 N.E. 53, 56 (1893), does use the term "watercourse" in a way which would describe the drainage area of the Millard property. However, the *Borgmann* opinion was concerned with defining a "natural surface water channel" or "drainway" in the context of another aspect of the modified common enemy doctrine which allows a landowner to collect surface water and discharge it into a "natural drainway" on his land. The court recognized that some courts have mistakenly used the term "natural watercourse" for "drainway." *Id.* at 195. It quoted *Lambert* because it in fact defined a drainway, even though it used the term "watercourse." *Borgmann* clearly recognized the validity of the *Happy v. Kenton* definition of "watercourse" as that term is used in Missouri cases applying the common enemy doctrine. There was substantial evidence to support the trial court's findings that the drainage area was not a watercourse under the *Happy v. Kenton* definition. Point I is denied.

■ For its second point Millard claims that the Sprocks should not be protected by the common enemy doctrine because 1) they did not affirmatively come forward with evidence of this defense, 2) their property was not adversely affected by the flow of surface water over it from the Millard property, and 3) they acted maliciously in building the dam because they did so only to flood the Millard property in retaliation for a dam Millard built at another point on the property line which flooded the Sprock property. We disagree. There was sufficient evidence in the record to support the application of the common enemy doctrine. Under the doctrine surface water is presumed to be an "enemy" and lower landowners have considerable freedom to block the flow of surface water onto their lands from upper lands. *Looney v. Hindman*, 649 S.W.2d 207, 210–11 (Mo. banc 1983). In the context of the bare obstruction of the flow of surface water by a lower owner, the abstract reasonableness of the lower owner's conduct is not an issue. *M.H. Siegfried*, 649 S.W.2d at 897; *Thomas*, 769 S.W.2d at 821. No negligence or recklessness in the manner of construction was at issue. *M.H. Siegfried*, 649 S.W.2d at 897. The lower landowner need not establish a good motive or good cause for blocking the surface water. Point II is denied.

■ For its third point, Millard contends the trial court erred in not granting it a prescriptive easement to drain its surface water over the Sprock land as prayed for in Count III of its petition. The Sprocks argue that the evidence did not support the elements necessary to establish a prescriptive easement and the occasional runoff of surface water onto adjacent land cannot create a prescriptive easement. No Missouri case since *Laumier v. Francis*, 23 Mo. 181 (1856), decided under the civil law rule, has found the natural drainage of surface water to create an easement in favor of the upper landowner. The application of the common enemy doctrine appears to preclude such an easement. *See* Snodgrass & Davis, "The Law of Surface Water in Missouri," 24 Mo.L.Rev. 137, 281, 295 (1959) and *M.H. Siegfried*, 649 S.W.2d at 896–97.[1] However, we do not need to

1. In *Edward Runge Land Co. v. Busch*, 594 S.W.2d 647, 651 (Mo.App.1980), on which Millard relies, the prescriptive rights related to an

reach this point on the merits. Although Millard claims there is substantial evidence to support the elements of a prescriptive easement, it does not describe that evidence with references to the 262 page transcript or the 102 page legal file in either the argument under Point III or in the Statement of Facts. This violates Rule 84.04(h). Point III has not been preserved for review and is denied.

■ For its fourth point Millard claims the trial court erred in excluding the testimony of its expert witness, Conrad Watson. The trial court excluded Watson's testimony under Rule 56.01. In response to the Sprocks' interrogatory to Millard seeking the name, address, and general nature of the testimony of any expert it may call, Millard identified Watson as a "soils expert and consultant." It was within the trial court's discretion to find that this response did not adequately detail the nature of the expert's expected testimony. We find no error in the exclusion of his testimony. *State ex rel. State Highway Commission v. Cool's Tall Tower Restaurant and Marina, Inc.*, 654 S.W.2d 224, 226 (Mo.App.1983). Point IV is denied.

For its fifth point Millard asserts the trial court erred in refusing to issue findings of fact and conclusions of law. In its order the trial court stated that it declined to issue findings of fact and conclusions of law "because the request was made after the cause was submitted and because the request lacked the specificity as called for by the Missouri Rules of Civil Procedure."

■ At the close of defendant's evidence, the trial court announced the case would be submitted. The parties discussed time limits for submission of memoranda. Millard's attorney did not request findings of fact and conclusions of law, rather the Sprocks' attorney did. He stated, "So we request findings of fact and conclusions of law on this." The trial court properly found the request to be untimely. Submission is final when the evidence and arguments are finished and the court takes the case, whether it is taken for immediate

decision or merely under advisement preliminary to the rendition of a decision. *Lopez v. Vance*, 509 S.W.2d 197, 204 (Mo.App. 1974). Moreover the request failed to comply with Rule 73.01 because it did not specify the issues of controverted fact on which findings and conclusions were sought. *Snider v. Snider*, 570 S.W.2d 770, 774–75 (Mo.App.1978). If Millard wished the court to make findings on specific issues, it had the duty, in view of the untimeliness and inadequacy of the Sprocks' request, to make its own timely and specific request. Since it did not do so, it cannot claim error. *Id.* at 774–75. Point V is denied.

The judgment of the trial court is affirmed.

CARL R. GAERTNER, C.J., and KAROHL, J., concur.

---

"artificial watercourse", not a natural drainage area.