**Anthony Michael HUDSON, by his Next Friend, Roche Hudson, Roche Hudson and Tammy Hudson, Appellants,**

v.

**Donald L. BEHRING, Kathy R. Behring, Lacy Behring and Gilbert Hudson, Respondents.**

**No. ED 89873.**

Missouri Court of Appeals,
Eastern District,
Northern Division.

June 17, 2008.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 4, 2008.

Application for Transfer Denied
Sept. 30, 2008.

Steven E. Raymond, Shelbyville, MO, for appellant.

John M. Hark, Charles L. Hickman, Hannibal, MO, for respondent.

ROBERT G. DOWD, JR., Judge.

Anthony Hudson, by his Next Friend, Roche Hudson, and Roche Hudson and Tammy Hudson (collectively referred to as "Plaintiffs") appeal from the judgment in favor of Donald Behring, Kathy Behring, and Lacy Behring ("the Behrings") and Gilbert Hudson ("Grandfather") (collectively referred to as "the Defendants") on Plaintiffs claims for personal injuries and negligence. We reverse and remand.

This case arose from an injury that occurred when Grandfather took his six-year-old grandson, Anthony Hudson, to the Marion County Fairgrounds to ride a pony named "Tex," who was owned by Grandfather. Lacey Behring was in the arena riding a horse named "Pressor" around the rail and Anthony Hudson was riding Tex in the arena. Lacey Behring, then twelve years old, was practicing with Pressor, a show horse owned by Kathy Behring and her husband Donald Behring. During this practice in the arena, Lacey Behring was directly supervised and being instructed by her mother Kathy Behring.

At some point shortly after entering the arena, Anthony Hudson fell from Tex. Lacey Behring proceeded to try to corral Tex for Anthony Hudson. Lacey Behring positioned Pressor near Tex and attempted to retrieve the reins. As she reached down, Anthony Hudson ran between Pressor and Tex. Pressor spun and kicked once hitting Anthony Hudson in the face with a hoof causing immediate injury.

Plaintiffs filed suit for the personal injuries of Anthony Hudson and his parents' derivative claims against the Behrings for ownership and possession of an abnormally dangerous animal and for negligence and against Grandfather for negligent supervision. Following a trial, the jury returned a verdict in favor of the Defendants. Thereafter, Plaintiffs filed a motion for new trial which was subsequently denied. Plaintiffs now appeal.[1]

In their first point, Plaintiffs contend the trial court erred and abused its discretion by denying Plaintiffs' request to excuse Juror Gene Powell ("Juror Powell") and seat an alternate. Plaintiffs argue Juror Powell's statement in an improper communication with Grandfather's daughter showed he was biased.

During voir dire, Plaintiffs' counsel asked if anyone knew the Plaintiffs or Grandfather. Juror Powell responded that he knew the family involved. Juror Powell specifically stated "I know the Hudsons." When the venire panel was later asked to raise their hands if any knowledge of the family would influence

---

1. We note the Behrings have pointed out several failures to comply with Rule 84.04 in Plaintiffs' brief and have requested we dismiss the appeal or strike Plaintiffs' brief. While it is within our discretion to dismiss an appeal for failure to comply with Rule 84.04, we will not exercise our discretion to dismiss an appeal for technical deficiency under Rule 84.04 unless the deficiency impedes disposition on the merits. *Gray v. White*, 26 S.W.3d 806, 815 (Mo.App. E.D.1999). Accordingly, where, as here, we can discern the essence of Plaintiffs complaints of trial court error, we shall address them on their merits and not dismiss the appeal or strike Plaintiffs' brief. The Behrings request is denied.

their decision, Juror Powell did not raise his hand.

Plaintiffs, however, contend the true level of Juror Powell's feelings for Grandfather was revealed during recess following Grandfather's testimony at the close of the next to the last day of the trial when Juror Powell had a conversation with Grandfather's daughter, Kathy Williams ("Williams"). The communication was brought to the trial court's attention by Plaintiffs' counsel. The following morning, Williams testified before the trial court out of the hearing of the jury and stated that Juror Powell said to her "If you see your dad later, tell him I love him to death. I could not have got up there and done what he did." Williams testified that she replied, "basically that's why I'm here today, to support my father because I thought it would be emotional for him." After hearing Williams's testimony, the trial court stated it would inquire of Juror Powell regarding the conversation and his statement. Plaintiffs declined to have the trial court conduct the inquiry. Plaintiffs' counsel stated his reason in declining the inquiry was based on his belief that the questioning would be unduly suggestive that Plaintiffs' counsel was the one who reported the improper communication and would prejudice the Plaintiffs. The trial court denied Plaintiffs' request that Juror Powell be excused and for an alternate to be seated in his place.

■ The substitution of an alternate juror for a regular juror during trial is a matter entrusted to the discretion of the trial court. *Yaeger v. Olympic Marine Co.*, 983 S.W.2d 173, 187 (Mo.App. E.D. 1998). It is axiomatic that civil litigants have a constitutional right to a fair and impartial jury of twelve qualified jurors. MO. CONST. ART. I, SEC. 22(a); *Williams By and Through Wilford v. Barnes Hosp.*, 736 S.W.2d 33, 36 (Mo. banc 1987). Litigants "are entitled to unbiased jurors whose experiences ... will not prejudice the resolution of the case." *Williams By and Through Wilford*, 736 S.W.2d at 36. It is essential that a competent juror must be in a position to enter the jury box disinterested and with an open mind, free from bias or prejudice. *Catlett v. Illinois Cent. Gulf R. Co.*, 793 S.W.2d 351, 353 (Mo. banc 1990). Even though three-fourths of the jury can decide a civil case, parties are entitled to have that decision, whether for them or against them, based on the honest deliberations of twelve qualified jurors. *Piehler v. Kansas City Public Service Co.*, 357 Mo. 866, 211 S.W.2d 459, 463 (1948).

■ Replacement of a juror with an alternate is an appropriate remedy when there is a *possibility* of bias. *Milam v. Vestal*, 671 S.W.2d 448, 453 (Mo.App. S.D. 1984). In *Milam*, a motor vehicle accident case, a juror was overheard conversing with two other jurors and saying he did not know how a person could sustain a back injury from a rear-end collision. *Id.* at 452. The trial court questioned the juror, who indicated he had an open mind, would listen to the evidence, and make a decision strictly based on the evidence. Id. The juror was later excused before the jury began its deliberation. *Id.* On appeal, the court found the trial court did not abuse its discretion because the record showed that the juror was removed because his reported remarks suggested a possible bias. *Id.* at 453.

■ Here, Juror Powell's statement "tell him I love him to death" clearly shows at least a possible bias. Defendants contend Plaintiffs waived their argument by failing to have the trial court question Juror Powell regarding the statement. However, the statement, on its face, clearly shows a possible bias and Juror Powell's explanation of the statement or assertion of impartiality would not overcome the

possibility of bias indicated by his statement. Even if Juror Powell would have reaffirmed his ability to be impartial upon questioning, "[a] venireperson should not be allowed to judge his own qualification to serve as a juror." *Dodson By and Through Dodson v. Robertson,* 710 S.W.2d 292, 295 (Mo.App. S.D.1986)(finding a jury that contained four friends of the defendant was not fair and impartial even where they stated they would be fair in voir dire and stating "[a] jury that contains friends and acquaintances of one of the parties is not the fair and impartial jury that the constitution envisions.") This is particularly true, where as here and in *Milam,* the juror's statement clearly indicates a real possibility of bias. In *Milam,* the trial court excused the juror and replaced him with an alternate even after he stated he would be open minded and base his decision on the evidence because his statement suggested a possible bias. *Id.* As in *Milam,* questioning Juror Powell about his statement would not diminish the possibility of bias. The record was sufficient to show the possibility of bias.

We find the trial court abused its discretion in failing to excuse Juror Powell and seat an alternate where Juror Powell's statement so clearly indicated a possible bias. Plaintiffs' first point is granted. Because we are reversing and remanding for a new trial, we need not address Plaintiffs' remaining claims of error, including claims of other juror misconduct.

The judgment is reversed and the cause is remanded for a new trial.

PATRICIA L. COHEN, C.J. and KURT S. ODENWALD, J., concur.