**FRICK'S MEAT PRODUCTS, INC., Respondent,**

v.

**COIL CONSTRUCTION OF SEDALIA INC., Appellant,**

v.

**David S. Frick, Cynthia L. Frick, Bluff Road, L.L.C., Woodside Drive, L.L.C., Bank of Washington, Richard F. Mayer, Larry Cook and CNA Manufacturing Systems, Inc. d/b/a CNA Consulting, Respondents,**

and

**Fidus Construction A.M., Inc., Intervenor.**

**No. ED 92195.**

Missouri Court of Appeals, Eastern District, Division Two.

April 20, 2010.

Frick's Meat Products, Inc. (Frick's) and David S. Frick, Cynthia L. Frick, Bluff Road LLC, Woodside Drive LLC, the Bank of Washington, and Richard F. Mayer as third-party defendants (collectively "third-party defendants"). Coil claims that the trial court erred because: (1) the judgment fails to address the evidence and "merely declares that each party is to take nothing"; (2) the undisputed evidence showed Coil's entitlement to damages for either breach of contract or unjust enrichment; and (3) Coil's judgment on Frick's claims is "inherently inconsistent" with the judgment in favor of Frick's and the third-party defendants on Coil's claims. We affirm.[1]

Thomas B. Weaver, St. Louis, MO, for appellant.

Jeffrey E. Green, Osage Beach, MO, for intervenor.

Richard F. Huck, III, Clayton, MO, for respondent.

PATRICIA L. COHEN, Judge.

### Introduction

Coil Construction of Sedalia, Inc. (Coil) appeals from the judgment of the Circuit Court of Franklin County denying its claims for breach of contract, *quantum meruit*, a mechanic's lien, and violation of Mo.Rev.Stat. § 436.300 *et seq.* against

### Background

On January 28, 2005, Frick's, a wholesale process meat supplier, brought a breach of contract action against Coil, a construction company with experience in the "food plant business." In its petition, Frick's alleged that Coil submitted a proposal in which it offered to design and construct a new ham processing plant for Frick's. Frick's alleged that in its proposal, Coil promised, among other things, to design and construct the ham plant in accordance with "U.S.D.A. and other applicable regulations," provide design and construction services on a "cost plus fee" basis with a guaranteed maximum price of approximately $6,560,000, subject only to changes agreed upon by the parties, and to complete construction of the ham plant

1. Frick's identifies several failures in Coil's brief to comply with the requirements of Rule 84.04. Specifically, Frick's points out that, among other things, Coil provided an insufficient statement of facts, advanced arguments not set forth in the points relied on, offered conclusory propositions without referencing specific testimony or evidence, and failed to state the applicable standard for each point relied on. "While it is within our discretion to dismiss an appeal for failure to comply with Rule 84.04, we will not exercise our discretion to dismiss an appeal for technical deficiency under Rule 84.04 unless the deficiency impedes disposition of the merit s." *Hudson v. Behring*, 261 S.W.3d 621, 623 n. 1 (Mo.App. E.D.2008). The deficiencies in Coil's brief do not impede our ability to dispose of Coil's assertions of error on the merit s, and therefore, we decline to dismiss Coil's appeal.

during the fall of 2004 or, at the latest, by December 31, 2004. Frick's alleged that it accepted Coil's proposal thereby "forming an enforceable agreement." Frick's further alleged that the parties later expanded the project, increasing the guaranteed maximum price to $7,506,062. Frick's claimed that Coil breached the contract by providing defective work, refusing to provide design and construction services on a "cost plus fee" basis, wrongfully abandoning the project, and failing to complete construction within the agreed-upon timeframe.

In response, Coil filed an answer to Frick's petition, as well as an amended third-party petition and counterclaim against Frick's and third-party defendants, seeking damages for breach of contract, recovery under *quantum meruit*, a mechanic's lien, and damages under Missouri's statute on payment of retainage, Mo.Rev.Stat. § 436.300 *et seq.*[2] In its answer, Coil admitted that the parties entered into an "enforceable agreement." Coil, however, denied Frick's allegations regarding the terms set forth in its proposal and the agreed-upon maximum price of the project at $6,560,000 and later $7,506,062. In its amended third-party petition and counterclaim, Coil claimed that Frick's failed to provide Coil with progress payments for work completed, and that Frick's had breached the parties' contract by providing Coil "incorrect, misleading, false, and contradictory directions" regarding the project and "intentionally and purposefully interfer[ing] with, undermin[ing], and subvert[ing] Coil's relationships with Coil's subcontractors and suppliers . . . and with Coil's own employees." Additionally, Coil sought recovery under the theory of *quantum meruit*, claiming that Frick's

had not paid Coil the reasonable value of the material and construction services Coil had contributed to the ham processing plant.

At trial, the evidence showed the following: Coil submitted a proposal whereby it would design and construct a ham processing plant for Frick's. Frick's hired Coil for the project, but the parties did not enter into a written contract. Rather, Frick's and Coil began meeting on a monthly basis where the parties continued to negotiate the "scope" and price of the project. Although the parties had not agreed upon the scope and pricing terms, Coil commenced project design work and later began construction. During construction, Coil proposed several draft contracts setting forth the scope of Coil's responsibilities and a contract price. Frick's refused Coil's proposals, but continued to pay Coil as construction of the project progressed.

After several months of construction, Frick's and Coil's working relationship began to deteriorate. On one occasion, Coil "walked off" the project, but returned the next day. The parties remained unable to decide on the scope and pricing terms of their agreement. At one point, Coil and Frick's attorneys met in an effort to address "the construction terms, scope of work, and other specific project details that remain[ed] to be resolved." Further disputes over quality of work, schedule delays, and demands for payment arose between the parties. Finally, after a dispute regarding payment, Coil walked off the project and did not return.

After Coil left the project, Frick's hired additional contractors to complete con-

---

2. Coil also sought relief for fraudulent misrepresentation, tortious interference with business relationships, defamation, and civil conspiracy against two other third-party defendants, Larry R. Cook and CNA Manufacturing Systems, Inc., d/b/a CNA Consulting. These claims, however, are not the subject of this appeal.

struction of the ham plant. Additionally, Frick's discovered and repaired, at its own expense, a variety of defects in Coil's work, including inadequate wind and roof loading designs, floor cracks, wall cracks, refrigeration units interfering with the rail system, deficient installation of HVAC units, water leakage throughout the entire plant, etc.

At the close of the evidence, the parties submitted to the trial court a stipulation of facts and a financial report prepared by a special master. In the stipulation, the parties agreed that Coil had paid material, labor, and subcontractor costs totaling $5,129,453.73 and that Frick's had paid Coil $5,501,246.68. In his report, the special master determined that the balance Frick's owed to Coil's subcontractors was $404,632.17, Coil's unpaid contractor's fee of 7.5% amounted to $136,138.26, and outstanding interest due on late payments to Coil and interest under a January 22, 2005 lien was $145,248.26, for a total balance of $686,018.69.

After hearing all of the evidence and receiving the parties' stipulation and the special master's report, the trial court entered its judgment denying both Frick's and Coil relief on all of their respective claims. The trial court did not render any findings of fact or conclusions of law or provide an explanation for its decision on the record. Coil appeals.

### Standard of Review

█ A trial court's judgment will be affirmed unless no substantial evidence supports it, it is against the weight of the evidence, or it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Where, as here, the trial court rendered no findings of fact or conclusions of law, all factual issues are presumed resolved in accordance with the result reached, and we will affirm the trial court's judgment if it is correct under any

reasonable theory supported by the evidence. *Weaks v. Rupp*, 966 S.W.2d 387, 392 (Mo.App. W.D.1998).

### Discussion

█ In its first point, Coil contends that the trial court erred in entering its judgment because "rather than addressing the evidence on the claims of any party, the judgment merely declares that each party is to take nothing on the opposing party's claims." Moreover, Coil accuses the trial court of "throw[ing] up its hands in frustration" and failing to perform its "judicial function of hearing and deciding cases." Coil asserts that the trial court is required to provide an explanation for its decision and that the trial court's "judgment, which merely directs the parties to go away, is not a proper resolution of the disputes that the parties expended years of time and thousands of dollars in costs and attorney fees to present the trial court."

█ With respect to the trial court's duty to explain the basis for its judgment, Rule 73.01(c) provides in pertinent part:

The court shall render the judgment it thinks proper under the law and the evidence.

If a party so requests, the court shall dictate to the court reporter or prepare and file a brief opinion containing a statement of the grounds for its decision and the method of deciding any damages awarded.

The court may, or if requested by a party shall, include in the opinion findings on the controverted fact issues specified by the party. Any request for an opinion or findings of fact shall be made on the record before the introduction of evidence at trial or at such later time as the court may allow.

Mo. Sup.Ct. Rule 73.01(c). Consistent with Rule 73.01(c)'s mandate, courts have

routinely recognized that "it is the parties' duty to specifically request findings of fact and conclusions of law, identifying the issues they wish the court to decide." *Hammons v. Ehney*, 924 S.W.2d 843, 849 (Mo. banc 1996); *see also Millard Farms, Inc. v. Sprock*, 829 S.W.2d 1, 4 (Mo.App. E.D. 1991). A party who fails to properly request the trial court to issue findings on specific issues is barred from later claiming error on that basis on appeal. *See Sprock*, 829 S.W.2d at 4.

Here, Coil readily admits that "the parties to this case did not request findings and conclusions before the trial began." Nevertheless, Coil asserts that it "is not claiming that the trial court erred in failing to provide detailed findings of fact and conclusions of law as contemplated by Rule 73.01. . . . The issue in this appeal is more fundamental: Are parties in a significant case entitled to know the basis of a decision against them?" Under Rule 73.01(c), parties in all civil actions, including "significant" ones, are entitled to know the basis of the judgment against them, if the party properly requests the trial court to articulate the basis for its judgment. Specifically, Rule 73.01(c) provides that the trial court shall articulate the "grounds for its decision" or provide "findings on the controverted fact issues" on the record upon a proper request from a party. In construing Rule 73.01(a)(2) (Rule 73.01(c)'s prede-

cessor), our Supreme Court stated in words clearly applicable here:

> When parties desire specific findings . . . such findings may be obtained by means of a proper request pursuant to Rule 73.01(a)(2). We are not inclined to impose on trial courts the onerous burden of making detailed findings . . . when parties desiring such findings can, with the exercise of a modicum of foresight, obtain them with a simple request made in compliance with Rule 73.01(a)(2).

*Dardick v. Dardick*, 670 S.W.2d 865, 868 (Mo. banc 1984). Coil admittedly failed to request the trial court to articulate grounds for its decision or issue findings. Consistent with *Dardick*, we decline to require a trial court to issue findings or articulate the grounds for its decision in the absence of a Rule 73.01(c) request. Point denied.[3]

In its third point,[4] Coil contends that the trial court erred in entering its judgment in favor of Frick's and the third-party defendants on Coil's claims because "the undisputed and stipulated facts show that (a) Coil was entitled to recovery for breach of contract because a contract existed between Coil and [Frick's], [Frick's] violated the contract, and Coil was thereby damaged or, in the alternative, (b) Coil was entitled to recovery for unjust enrichment [*quantum meruit*] because Coil provided construction services that were of value to [Frick's] for which [Frick's] failed and refused to compensate Coil."[5] We disagree.

---

3. We note that Coil analogizes this case to our decision in *King v. Bullard*, 257 S.W.3d 175 (Mo.App. E.D.2008), where we criticized the trial court, which "seem[ed] to have thrown up its hands in frustration," for failing to render an accounting of a partnership. *Id.* at 184. *King* is inapposite because there the trial court had a statutory duty under Mo.Rev. Stat. § 358.220 to render an accounting. *Id.* In contrast, the trial court here did not have a duty to render findings explaining its judgment because neither party requested such findings as required by Rule 73.01(c). More-

over, contrary to Coil's claim that the trial court "threw its hands up in frustration," Coil points to nothing in the instant record and we do not find anything suggesting that the trial court failed to adequately assess the parties' claims and reach an informed judgment.

4. We have rearranged Coil's second and third point for continuity in our analysis.

5. In its point on appeal, Coil uses the terms "unjust enrichment" and "*quantum meruit*" interchangeably. The terms, however, are

First, Coil argues that the undisputed evidence shows that it is entitled to damages for breach of contract. Coil asserts that "[t]here can be no dispute that Coil and [Frick's] had a contract" because both parties alleged in their respective pleadings that they entered into an "enforceable agreement." Coil further argues that "[t]here is no doubt that [Frick's] breached the agreement to pay Coil for the work."

■■■■ To establish a claim for breach of contract, a party must first establish the existence of a valid contract. *Gateway Exteriors, Inc. v. Suntide Homes, Inc.*, 882 S.W.2d 275, 279 (Mo.App. E.D.1994). "In order for a contract to be formed, the parties must mutually assent to its terms." *Id.* In particular, the parties must agree on a definite price in order for a contract to be binding. *Olathe Millwork Co. v. Dulin*, 189 S.W.3d 199, 204 (Mo.App. W.D.2006). Additionally, there is no enforceable contract when the parties reserve essential terms for future determination. *Gateway Exteriors, Inc.*, 882 S.W.2d at 279.

■■■■ Here, the trial court reasonably could have denied Coil's breach of contract claim, having found that the parties never entered into a valid and enforceable contract. Coil asserts that "[t]he evidence shows that an oral contract was entered into between the parties." Coil, however, cites no record evidence in support of its assertion, but rather relies on Frick's allegation of the existence of an "enforceable agreement" in its petition. Coil's reliance on Frick's petition is misplaced because an

allegation of a legal conclusion in a pleading, such as the existence of a valid and enforceable contract, is not an admission of fact that is binding on the party. *See Sayers v. Bagcraft Corp. of Am., Inc.*, 597 S.W.2d 280, 283 (Mo.App. S.D.1980). More importantly, however, even though Coil admitted in its answer the existence of an "enforceable agreement", it denied all of Frick's allegations regarding the terms of the agreement, notably the price.[6]

Consistent with the disagreement evident in the parties' pleadings, there was substantial evidence at trial from which the trial court could have found that the parties failed to form a valid contract. Specifically, the evidence showed that, despite several attempts, the parties failed to settle on the essential terms of the agreement, including the scope of the project and the price. Without a contract, the parties' relationship deteriorated and Coil eventually walked off the job after a dispute regarding payment. From this evidence, the trial court could have concluded that the parties failed to agree on the essential terms of the agreement and therefore no enforceable contract existed between Coil and Frick's.

Second, as an alternative to its breach-of-contract claim, Coil argues that it is entitled to recovery under *quantum meruit* for the work it provided to Frick's. Specifically, Coil asserts that the undisputed evidence shows that it provided materials and construction services that added value to Frick's ham processing plant. Coil claims that, based on the special mas-

---

not synonymous. *See Johnson Group, Inc. v. Grasso Bros., Inc.*, 939 S.W.2d 28, 30 (Mo. App. E.D.1997) (explaining the distinction between recovery based on unjust enrichment and *quantum meruit*). Because Coil sought recovery under the theory of *quantum meruit* and generally uses case law discussing *quantum meruit* in its brief, we limit our analysis under that theory of recovery.

6. We also note that Coil's assertion that "[t]here can be no dispute that Coil and [Frick's] had a contract" is disingenuous because Coil recognized the possibility that the trial court might find that no contract existed when the stipulation between Frick's and Coil provided: "if the Court finds that no contract existed between the parties. . . ."

ter's valuations, the reasonable value of the materials and construction services provided that remained unpaid totaled $686,018.69.

■ "A quantum meruit claim is based on a promise implied by the law that a person will pay reasonable compensation for valuable services or materials provided at his request or with his approval." *Moran v. Hubbartt*, 178 S.W.3d 604, 615 (Mo. App. W.D.2005) (quotation omitted). Under *quantum meruit*, "the measure of recovery is the reasonable value of the goods or services furnished to the benefited defendant." *Johnson Group, Inc.*, 939 S.W.2d at 30 (quotation omitted). Failure to prove reasonableness of costs is fatal to a *quantum meruit* claim. *Bldg. Erection Serv's. Co. v. Plastic Sales & Mfg. Co., Inc.*, 163 S.W.3d 472, 481 (Mo.App. W.D. 2005). Additionally, a showing that the goods or services provided have a diminished value may decrease or even extinguish a claim under *quantum meruit*. *Bruce v. Spillman*, 497 S.W.2d 196, 201 (Mo.App.1973).

■ Here, even assuming the trial court found that Coil added value to Frick's project, the trial court also could have found that Coil was not entitled to recovery under *quantum meruit* because Frick's had already paid Coil the reasonable value of the material and construction services Coil provided. Specifically, the evidence showed that Coil paid material, labor, and subcontractor costs totaling $5,129,453.73, and Frick's paid Coil $5,501,246.68. As evidence of the value of the goods and services provided, Coil relies on the $686,018.69 figure calculated by the special master, which includes money owed to Coil's subcontractors, Coil's contractor's fee of 7.5%, interest due on late payments, and interest due on unpaid amounts under lien. The special master's calculations are not alone sufficient to prove the "reasonable value" of the uncompensated work performed by Coil. *See, e.g., St. Charles Floor Co. v. Hoelzer*, 565 S.W.2d 844, 847–48 (Mo.App.1978) (hourly wage figures not recoverable under *quantum meruit* theory without evidence relating it to the reasonable value of work performed). Furthermore, the special master's figures do not take into account the evidence of the numerous defects in Coil's work, which the trial court could have determined diminished or extinguished Coil's recovery under *quantum meruit. See Bruce*, 497 S.W.2d at 201.

Given the evidence in this case, the trial court reasonably could have concluded that Coil and Frick's did not enter into a valid contract and that Coil was not entitled to recovery under *quantum meruit.* Because the trial court's judgment is supported by the evidence, we decline to disturb it.[7] Point denied.

■ In its second point, Coil contends that the judgment in favor of Frick's and third-party defendants on Coil's claims is "inherently inconsistent" with the judgment in favor of Coil on Frick's claims. Specifically, Coil claims that because it

---

7. We note that in the argument section of its third point, Coil also contends that it is entitled to relief under Missouri's statute on payment of retainage, Mo.Rev.Stat. § 436.300 *et seq.*, and Missouri's Private Prompt Pay Act, Mo.Rev.Stat. § 431.180 *et seq.*, as well as a mechanic's lien. We agree with Frick's that Coil failed to identify these assignments of error in its point relied on and, therefore, Coil abandoned the point. *See Richey v. Philipp*, 259 S.W.3d 1, 18 (Mo.App. W.D.2008) (quoting *Brizendine v. Conrad*, 71 S.W.3d 587, 593 (Mo. banc 2002)). In any event, Coil's claims under the statute on payment of retainage, the Private Prompt Pay Act, and for a mechanics lien are without merit in light of our determination that the trial court reasonably could have found that Coil and Frick's did not form a valid contract and that Coil was not entitled to recovery under *quantum meruit*.

prevailed on Frick's claims, the trial court necessarily found either that: (1) Coil and Frick formed a contract that Frick breached first, thereby entitling Coil to damages; or (2) there was no contract, and Coil is therefore entitled under *quantum meruit* for the reasonable value it added to the project.

In support of its point, Coil relies on the general rule that "[a] judgment based on inconsistent and ambiguous findings does not allow for adequate appellate review and must be reversed and remanded." *McGahan v. McGahan,* 237 S.W.3d 265, 272 (Mo.App. E.D.2007). The cases cited by Coil applying the above rule, however, are not directly applicable because in those cases, the trial court's factual findings were either inconsistent with the trial court's other findings or with the trial court's judgment. *See id.; Klinkerfuss v. Cronin,* 199 S.W.3d 831, 842 (Mo.App. E.D.2006); *In re Marriage of Maninger,* 106 S.W.3d 4, 12 (Mo.App. E.D.2003); *Main Street Feeds, Inc. v. Hall,* 975 S.W.2d 227, 234 (Mo.App. S.D.1998). Here, the trial court did not issue findings and thus all factual issues are presumed consistent with the result reached. *Weaks,* 966 S.W.2d at 392. Accordingly, the rule regarding inconsistent and ambiguous findings is inapplicable in this case.

Additionally, we find that the trial court's judgment is not inherently inconsistent. As described in our resolution of Coil's third point, the trial court reasonably could have concluded that the parties failed to form an enforceable contract and, consequently, denied both Frick's and Coil's breach of contract claims. Consistent with that finding, and under the cir-cumstances present here, the trial court also could have found that Coil was not entitled to relief under *quantum meruit.* Point denied.[8]

### Conclusion

The trial court's judgment is affirmed.

SHERRI B. SULLIVAN, P.J., and ROBERT G. DOWD, JR., J., Concur.

---

8. We note that Coil also relies on *Reinbott v. Tidwell,* 191 S.W.3d 102, 112 (Mo.App. S.D. 2006), where the court reversed the trial court's judgment because, among other things, the award of damages was inconsis-tent with the judgment. *Reinbott* is inapposite because, here, the trial court awarded no damages to either Coil or Frick's which is consistent with its judgment against Coil and Frick's on all of their respective claims.